IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYRON McGARRAH, #295907, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:14-CV-2088-B-BK |
| | § | |
| MILTON KIMBROW, et al., | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

On June 9, 2014, Plaintiff, a pretrial detainee, filed a *pro se* complaint under 42 U.S.C. §
1983, which was automatically referred to the Magistrate Judge.  *See* 28 U.S.C. § 636(b) and
*Special Order 3*.  The undersigned granted the motion to proceed *in forma pauperis*, but did not
issue process pending preliminary screening.  For the reasons that follow, this case should be
summarily dismissed.

I. BACKGROUND

Plaintiff sues Johnson County Sheriff Bob Alford, Johnson County Jail Warden Eddie
Williams, Assistant Warden Jimmy Johnson, Kitchen Manager Milton Kimbrow, and Five Star
Food Services Corporation (Kimbrow's employer).  Doc. 3 at 4-5.  He complains of
constitutional violations stemming from a "campaign of harassment" by trustees and other
detainees against the sex-offender cell block of the Johnson County Jail, where he was confined
from October 26, 2013, until June 2, 2014.  Doc. 3 at 7.  Plaintiff specifically asserts that
Kimbrow "routinely lets trustees prepare chow trays that are served to the sex offender cell block
with inadequate portions that are at improper temperatures, coffee and juice served watered
down and weaker and frequently contaminated with cleaning chemicals and even urine, whereas

the other cellblocks do not suffer this same treatment." Doc. 3 at 5. He also complains that, at

times, no milk was served for breakfast and no other protein was substituted. Doc. 3 at 6.

Plaintiff states Sheriff Alford "d[id] nothing" despite being informed of the situation, and

Warden Williams "locked [him] up on 12/10/2013 for grieving [the above] violations." [Doc. 3

at 4, 7]. Williams released Plaintiff from administrative segregation the following day after

Plaintiff apologized to a corporal and agreed to "quit writing grievances." [Doc. 3 at 7]. With

respect to Assistant Warden Johnson, Plaintiff contends he did "not act[] in good faith to rectify

[the situation in response to the numerous] grievances." [Doc. 3 at 4]. He maintains the

"campaign of harassment" against sex-offenders continued, even though he stopped submitting

grievances. [Doc. 3 at 7]. Ultimately, on June 2, 2014, Plaintiff claims he was transferred to the

Jack Harwell Detention Center in Waco in retaliation for filing this and other civil rights actions.

[Doc. 3 at 7]. He seeks compensatory and punitive damages. [Doc. 3 at 8].[1]

In support of his claim that coffee and juice were contaminated with urine and/or

cleaning chemicals, Plaintiff states that all beverage containers at the Johnson County Jail were

labeled with the tank or cell block designation, Orange West in the case of the sex-offender cell

block. [Doc. 8 at 3]. He asserts that, when Orange West's beverage containers were "not in the

---

[1] The complaint also requested declaratory and injunctive relief. [Doc. 3 at 6, 8]. Plaintiff's
transfer to the Jack Harwell Detention Center in Waco, Texas, (shortly before this action was
filed) and then to the Texas Department of Criminal Justice (where he is presently confined),
renders that claim moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (prisoner's
transfer rendered moot his claim for declaratory and injunctive relief. Contrary to Plaintiff's
assertion, any suggestion of relief based on the possibility of a transfer back to the Johnson
County Jail [Doc. 3 at 8] is merely speculative. *See Herman*, 238 F.3d at 665. In addition, while
Plaintiff claims the "problem still exists for other[s] in the sex offender cell block" [Doc. 3 at 8],
he cannot represent Johnson County inmates in his *pro se* capacity. *See* FED. R. CIV. P. 11(a)
("Every pleading, written, motion, and other paper shall be signed by at least one attorney of
record in the attorney's name– or by a party personally if the party is unrepresented.").

sight of correctional officers, trustees and other detainees . . . contaminat[ed]" them.  [Doc. 8 at 3].  Plaintiff states that on November 13 and December 8, 2013, and again on January 18, 2014, after consuming coffee contaminated with cleaning chemicals, he experienced "a severe bout of vomiting followed by a day long diarrhea."  [Doc. 8 at 4].  Following the January incident, Plaintiff did not trust drinks brought to the cell block and just drank water.  [Doc. 8 at 5].

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, the complaint is subject to screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Those statutes provide for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers).  Even under this most liberal construction, however, Plaintiff's claims are frivolous.

### Reduced Food Portions and Watered Down/Contaminated Coffee and Juice

At the outset, the Court notes that Plaintiff's pleadings do not allege any direct involvement by Sheriff Alford, Warden Williams, or Assistant Warden Johnson.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (supervisory government employees are only liable for their own misconduct, and the doctrine of *respondeat superior* does not provide a basis for liability in a section 1983 action).  Indeed, none of the pleadings assert that Alford, Williams, or Johnson

personally participated or authorized others to act or fail to act with respect to the reduced, cold

food portions and watered down or contaminated coffee and juice served to the sex-offender cell

block.  The complaint and answers to the questionnaire confirm that Plaintiff sues these

Defendants only in their supervisory capacity.  Accordingly, Plaintiff does not raise an arguable

claim against Defendants Alford, Williams, and Johnson with respect to the cold, reduced food

portions and watered-down and contaminated coffee and juice.

Assuming Kimbrow's direct involvement, Plaintiff's assertions do not rise to a

cognizable constitutional violation.  Because Plaintiff was a pre-trial detainee, the Court analyzes

his claim under the Fourteenth Amendment, not the Eighth Amendment.  *Hare v. City of*

*Corinth, Miss.,* 74 F.3d 633, 639 (5th Cir.1996) (en banc) (citing *Bell v. Wolfish,* 441 U.S. 520

(1979)).  Pretrial detainees may bring constitutional challenges under two alternative theories:  as

an attack on a condition of confinement or as an episodic act or omission.  *Shepherd v. Dallas*

*County,* 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644-645).  A condition of

confinement case occurs when a constitutional attack is made on the "general conditions,

practices, rules, or restrictions of pretrial confinement," *Hare*, 74 F.3d at 650, which relate to a

specific "policy or restriction," such as "the number of bunks per cell, mail privileges,

disciplinary segregation, etc." *Shepherd*, 591 F.3d at 452.[2]  Conversely, in an episodic act or

omission case, the plaintiff generally "faults specific jail officials for their acts or omissions." *Id.*

Because the claim focuses on an individual's misconduct, the detainee bears the burden of

---

[2] When a condition of confinement claim is properly stated, the plaintiff need no demonstrate "a
municipal entity's or individual jail official's actual intent to punish because . . . intent may be
inferred from the decision to expose a detainee to an unconstitutional condition." *Id.*

establishing that the official "'acted or failed to act with deliberate indifference to the detainee's needs.'" *Id.* (quoting *Hare*, 74 F.3d at 648).

Here, Plaintiff's contentions center on an individual specific act -- Kimbrow's purported misconduct in letting trustees prepare and serve inadequate, cold portions of food, and watered-down and/or contaminated coffee and juice to the sex-offender cell block.  Because Plaintiff's factual assertions do not suggest a "systematic failure" in failing to provide nutritionally adequate food and water to detainees at the Johnson County Jail, the Court concludes that he presents an episodic act or omission claim.  *Shepherd*, 591 F.3d at 452 (collecting episodic act or omission cases in which the plaintiff did not suffer from an alleged unlawful condition but from an individual's specific acts, and distinguishing them from a confinement claim implicating the jail's evaluation, monitoring, and treatment of inmates with chronic illness).

To make out a constitutional claim based on prison conditions, a detainee must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hare,* 74 F.3d at 648–49 (applying *Farmer* standard for convicted inmates to a pretrial detainee's episodic act claim).  An objectively, sufficiently serious injury is one that denies the detainee "'the minimal civilized measure of life's necessities.'"  *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  The detainee, must also establish that the official was deliberately indifferent to the inmate health or safety -- that he "knew of and disregarded an excessive risk to the inmate health or safety.  *Id.* at 834, 837.  The official "must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.[3]

In this case, even under the most deferential review, Plaintiff has not raised an objectively, sufficiently serious injury.  While the Constitution requires that inmates receive "reasonably adequate" food, *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988), Plaintiff has pled no facts to support that the meals he received while confined in the sex-offender block were nutritionally or otherwise constitutionally inadequate or improper.  *See Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.").  He complains generally that the portions appeared smaller than the ones served to non-sex-offenders, and that food was "served at improper temperatures," and that, at times, no milk was served for breakfast and no other protein was substituted.  [Doc. 3 at 6].  Yet, Plaintiff does not contend that he lost weight or that he suffered any physical injury as a result of the purportedly smaller portions.  *See Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) (no constitutional violation absent showing that meals received during lockdown were nutritionally or constitutionally inadequate or improper).  Moreover, the fact that food was served cold or at improper temperatures does not rise to a constitutional deprivation.  *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (no constitutional deprivation where jail occasionally served cold food).

Likewise, this is not a case where Plaintiff was denied drinkable water.  He complains of watered down coffee and juice, which trustees or other detainees at times contaminated with

---

[3] Thus, in an episodic act or omission case, the substantive analysis remains the same whether the claim is brought by a pretrial detainee or a convicted inmate.  As noted in *Hare*, "no constitutionally relevant difference exists between the rights of pre-trial detainees and convicted prisoners to be secure in their basic human needs."  74 F.3d at 647.

cleaning chemicals or urine.  However, "occasional incidents of tainted food or food containing foreign objects, while regrettable, do not raise a question of constitutional proportion." *Gardner v. Devenyns*, 2012 WL 706850 *3 (D. Md. Mar. 2, 2012), *aff'd*, 474 Fed. Appx. 378 (4th Cir. 2012); *Hamm v. DeKalb County*, 774 F.2d at 1575 (fact that food in jail occasionally contained foreign objects did not amount to constitutional deprivation).   Plaintiff's assertions raise at the most a problem of internal prison administration that should be addressed by prison authorities. *Gardner*, 2012 WL 706850 *3.

Even assuming an objectively, sufficiently serious injury, Plaintiff fails to plead any facts that Kimbrow's conduct amounted to deliberate indifference.  His filings do not identify any specific act that is attributable to Kimbrow and that rises to deliberate indifference – namely that he was aware that Plaintiff was at risk of serious harm.  Plaintiff merely asserts that Kimbrow "routinely let[] trustees prepare chow trays" and coffee and juice.  [Doc. 3 at 5].  Insofar as Kimbrow sanctioned the trustee's preparation of trays with smaller food portions served at inadequate temperature, Plaintiff presents no fact that Kimbrow knew of, and disregarded, a serious risk of harm to the Plaintiff.  Likewise Plaintiff concedes the trustees contaminated coffee and juice outside of the officers' presence.  Moreover, even if Kimbrow was negligent or gross negligent, his conduct would not rise to deliberate indifference or a constitutional violation. *See Farmer*, 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence"); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent act in and of itself does not rise to a constitutional violation).  For the same reasons, Plaintiff's claims against Five Star Food Services Corporation, Kimbrow's employer, are equally infirm.  Accordingly, under the facts pled in the complaint, Plaintiff's claim lacks any arguable basis in law and should be dismissed as frivolous.

## Failure to Adequately Investigate

In answer to the questionnaire, Plaintiff asserts that Defendants' failure to adequately investigate the situation and implement "policies to ensure the human treatment of all detainees" caused him and the sex-offender detainees to "suffer inhumane conditions." [Doc. 8 at 5].  In essence, he claims the Defendants failed in "good faith" and in a reasonable manner to respond to the huge number of grievances complaining about the same matter – namely the campaign of harassment against the sex-offender cell block.  [Doc. 8 at 5].  However, Plaintiff does not have a constitutionally-protected liberty interest in having "grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 373-374 (5th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").  Nor does Plaintiff "have a constitutional entitlement to an adequate grievance procedure." *Hill v. Bowles*, No. 3:02-CV-2527-P, 2003 WL 21448045 *5 (N.D. Tex. June 18, 2003) (collecting out-of-circuit precedent), recommendation accepted, 2003 WL 21977138 (N.D. Tex. July 31, 2003).  Since Plaintiff relies on an interest that does not exist in the law, his claim due process violation arising from the failure to investigate his grievances is factually and legally frivolous.

## Administrative Segregation

Next, Plaintiff contends he "was locked up in administrative segregation for writing grievances." [Doc. 3 at 7].  Insofar as he raises a due process claim stemming from his one-day confinement in administrative segregation, his claim fails.  In the absence of extraordinary circumstances, administrative segregation does not impose an atypical and significant hardship required to trigger the protections of the Due Process Clause.  *See Hernandez v. Velasquez*, 522

F.3d 556, 562-563 (5th Cir. 2008) (per curiam) (collecting cases).  Plaintiff does not allege any extraordinary circumstances in connection with his temporary placement in administrative segregation.  *Id.* at 563-564.  Therefore, this claim has no legal basis.[4]

Intentional Infliction & Harassment

As a result of the "campaign of harassment" against sex offenders, Plaintiff also complains of "intentional infliction of duress and undue harassment."  [Doc. 3 at 7]  His assertion, however, does not rise to a constitutional violation.  Intentional infliction of emotional distress is a state law tort claim, s*ee Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997), and verbal abuse or harassment, even by a prison guard, does not infringe on any constitutional right.  *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).  Therefore, this claim is factually and legally frivolous.

Legal Mail and Certified Mail Slip

Likewise Plaintiff's conclusory assertion that he "was denied certified mail slip" and that his "legal mail [was] opened" [Doc. 3 at 8] lacks any arguable legal basis.  Inmates do not have a constitutional right to send mail certified or return receipt requested.  *See Schack v. Wainwright,* 391 F.2d 608 (5th Cir. 1968) (per curiam) (declining to review inmate's request to have legal mail sent by certified mail, where it was undisputed that prison authorities had agreed to mail his correspondence and give assurance that it had been posted).  Moreover, while inmates have a First Amendment right both to send and receive mail, *see Thornburgh v. Abbott,* 490 U.S. 401 (1989), that right does not preclude prison officials from examining mail to ensure that it does not contain contraband.  *See Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir. 1993) ("A prisoner's

---

[4] Although Plaintiff specifically pleads retaliation in connection with his prison transfer, he does not assert retaliation with respect to his one-day stay in administration segregation.  [Doc. 3 at 7].

freedom from censorship under the First Amendment ... with regard to his incoming mail is not

the equivalent of freedom from inspection or perusal") (citing *Wolff v. McDonnell,* 418 U.S. 539,

576 (1974)).[5]

Retaliatory Transfer

Lastly, Plaintiff asserts he was transferred to the Jack Harwell Detention Center in

retaliation for filing this and other civil rights actions complaining about his treatment at the Ellis

County Jail.  [Doc. 3 at 7].[6]  However, he presents no facts that, if true, would prove causation.

*See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (to state a claim of retaliation, a prisoner

must allege facts that establish: 1) a specific constitutional right; 2) a defendant's intent to

retaliate against the plaintiff for exercising that right; 3) a retaliatory adverse act; and 4)

causation).  Causation requires a showing that "but for the retaliatory motive the complained of

incident . . . would not have occurred." *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)

(quotations and quoted case omitted).  "This [requirement] places a significant burden on the

inmate," *Woods*, 60 F.3d at 1166, who "must allege more than his personal belief that he is the

victim of retaliation." *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir.1999).

Here, Plaintiff concedes he was transferred on June 2, 2014, *two days before* he signed

the complaint and submitted it to prison officials for mailing.  [Doc. 3 at 9].  Moreover, his other

---

[5] Nor does Plaintiff indicate that he was prejudiced in any way in a legal proceeding because the mail room staff at the Ellis County Jail opened his legal mail outside of his presence.  *See Lewis v. Casey,* 518 U.S. 343, 349-51 (1996) (an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from the defendants' unconstitutional conduct).  *See also Sanders v. Carnley*, 100 Fed. Appx. 236, 237 (5th Cir. 2004) (unpublished per curiam) (assertions that sergeant opened prisoner's legal mail outside his presence were insufficient to establish denial of access to the courts).

[6] An inmate does not have a constitutional right to be housed in a particular facility.  *See Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) (citing *Olim v. Wakinekona,* 461 U.S. 238, 244-245 (1983)).

civil rights cases (unrelated to the "campaign of harassment") were summarily dismissed and, thus, never served on any of the Ellis County Defendants, who were in charge of his transfer. *See* Case Nos. 3:14-CV-1119-M-BN, and 3:14-CV-1125-N-BF.  Having failed to "'allege a chronology of events from which retaliation may plausibly be inferred,'" *Jones,* 188 F.3d at 325 (quoted case omitted), Plaintiff's claim lacks a legal basis.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to dismissal; however, leave is not required when he has already pled his "best case." *Brewster v. Dretke,* 587 F.3d 764, 767–68 (5th Cir. 2009).  Here, even taking Plaintiff's factual allegations as true, his claims are fatally infirm.  Thus, granting leave to amend would be futile and cause needless delay.

### IV. RECOMMENDATION

Accordingly, it is recommended that this action be summarily **DISMISSED** with prejudice as frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[7]

SIGNED October 14, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[7] 28 U.S.C. § 1915(g), commonly known as the "three-strikes" provision, provides: "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE